UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JAKEITH D. BROWNING, II, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 1:26-cv-00070-SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on petitioner Jakeith D. Browning, II's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1]. For the reasons stated below, the Court will deny the motion without an evidentiary hearing because the record conclusively establishes that petitioner is not entitled to relief.

## I. BACKGROUND[1]

Browning was indicted by the Grand Jury for the Eastern District of Missouri on July 11, 2023, along with eighteen co-defendants, and charged with conspiracy to distribute and possess with intent to distribute controlled substances including 500 grams or more of a mixture or substance containing methamphetamine, 400 grams or more of a mixture or substance containing fentanyl, and 500 grams or more of a mixture or substance containing cocaine in violation of Title 21, United States Code, Sections

[1] All citations to the record refer to the underlying criminal case, *United States v. Browning*, 1:23-cr-00070-SNLJ (E.D.Mo.), unless otherwise noted.

841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(A)(vi), 841(b)(1)(B)(ii)(II), and 846. [Doc. 1].

***Written Guilty Plea Agreement***

Browning pled guilty pursuant to a written guilty plea agreement with the government. [Doc. 635]. Under the plea agreement, Browning stipulated and agreed to the following facts: The SEMO Drug Task Force, FBI, and DEA initiated an investigation into a long-term, large scale drug trafficking organization (DTO) originating in Mississippi County, within the Southeastern Division of the Eastern District of Missouri. The DTO trafficked controlled substances from California and Georgia to Charleston, Missouri, and other areas, by shipping parcels through the mail, sending drivers to pick up and make deliveries, and by utilizing couriers to smuggle drugs via checked baggage on commercial airlines. During the course of the investigation, law enforcement officers seized hundreds of thousands of dollars in cash along with approximately 64.95 kg of methamphetamine, 3.55 kg of cocaine salt, 653.90 g of fentanyl, 215.01 g of MDMA, and 5.85 kg of marijuana. The defendant Jakeith D. Browning II was a manager or supervisor for the organization and assisted with day-to-day operations by, for example, paying couriers for transporting drugs.

On March 26, 2021, the Metro Nashville Airport Police Department Criminal Investigations Division received information from the FBI that codefendant Jadarius McCain (McCain) and defendant Jakeith D. Browning II (Browning) were flying into the Nashville International Airport from Los Angeles, California. When the luggage from the flight arrived in Nashville, a K9 alerted to the odor of narcotics in a suitcase belonging to McCain and alerted to the odor of narcotics again in a suitcase belonging

to Browning. McCain and Browning claimed both suitcases and attempted to leave the airport. Law enforcement officers stopped McCain and Browning and asked for consent to search their luggage. Both men consented to a search of their luggage. In Browning's suitcase, officers discovered hundreds of bags with commercial branding for marijuana packaging, three digital scales, and a fanny pack. Inside the fanny pack, officers found what the DEA lab has confirmed were 2973 pills containing a total of 338.90 grams of fentanyl, and 391 pills containing a total of 215.01 grams of MDMA.

Due to the length and breadth of the conspiracy, the exact amount of controlled substances attributable to defendant Browning is not subject to precise calculation. However, the parties agree that the defendant was responsible for more than 45 kilograms of methamphetamine. This agreement is based on seven seizures of controlled substances from the organization, flight records, cellphone communications, physical surveillance, and reliable witness testimony.

By this plea, the defendant admits that, within the Southeastern Division of the Eastern District of Missouri and elsewhere, he reached an agreement with others to distribute and to possess with intent to distribute controlled substances, that he joined the agreement voluntarily and intentionally, that he knew the purpose of the agreement, and that the quantity of a mixture or substance containing methamphetamine involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators known or reasonably foreseeable to him was 45 kilograms or more.

By executing the written plea agreement, Browning acknowledged that he "voluntarily entered into both the plea agreement and the guilty plea" and that the guilty plea is made of his "own free will and that [he] is, in fact, guilty." [*Id.* at p. 12].

The possible penalties were set forth in the plea agreement as follows:

> The defendant fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least 10 years and carries a maximum possible penalty of life imprisonment, a fine of not more than $10,000,000.00, or both such imprisonment and fine. The Court shall impose a period of supervised release of not less than 5 years. In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentenced imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

[*Id.* at p. 5].

The parties agreed that the U.S. Sentencing Guidelines total offense level analysis agreed to by the parties was the result of negotiation and led, in part, to the guilty plea. [*Id.* at p. 2]. They further agreed that the defendant would recommend a sentence not less than 120 months, and the Government would recommend a sentence not more than 240 months. [*Id.*]. As for the total offense level, the parties agreed:

> The quantity of methamphetamine for which defendant is accountable, including relevant conduct, is at least 45 kilograms of methamphetamine, resulting in a base offense level of 38.
>
> Two levels should be added because the defendant committed the offense as part of criminal conduct engaged in as livelihood.
>
> Three levels should be added because the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive.

> Three levels should be deducted because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty.
>
> The parties estimate that the total offense level will be 40.

[*Id.* at pp. 5-7].

Finally, the plea agreement contained the following language:

> The defendant is fully satisfied with the representation from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

[*Id.* at p. 10].

***Change of Plea Hearing***

On October 8, 2024, Browning appeared with his attorney for a change of plea hearing pursuant to the written guilty plea agreement. [Doc. 889]. He was placed under oath and advised that his answers were subject to the penalties of perjury if he did not answer truthfully. [*Id.* at p. 3]. During the plea colloquy, the Court asked Browning if he had read and understood the plea agreement:

> Court: The lawyers have given me this written guilty plea agreement consisting of 13 pages. I see that you and the lawyers signed it on page 13; is that right?
> Browning: Yes, Your Honor.
>
> Court: Have you read the agreement?
> Browning: Yes, Your Honor.
>
> Court: Have you gone over it in detail with your lawyer?
> Browning: Yes, Your Honor.

Court: And so he's explained the contents of the agreement in detail to you; right?
Browning: Yes, Your Honor.

Court: And you understood the contents of the agreement?
Browning: Yes, Your Honor.

Court: Is there anything in here that you do not understand?
Browning: No, Your Honor.

[*Id.* at p. 6].

The Court also covered the possible range of penalties with Browning prior to accepting his plea of guilty and the sentencing recommendations by the Government and Defendant.

Court: I see on page 2 that Defendant will recommend a sentence of not less than 120 months or 10 years and the Government will recommend a sentence of not more than 240 months or 20 years. So is that the deal then?
Browning: Yes. Yes, Your Honor.

Court: So the joint recommendation is for between 10 and 20 years in prison, basically? Is that your understanding?
Browning: Yes, Your Honor.

Court: Okay. And you're free to ask for any sentence not less than 10 years and the Government is prohibited from asking a sentence greater than 20 years. Do you understand all that?
Browning: Yes, Your Honor.

Court: Now, this is not a binding plea agreement, is it?
Counsel: No.

Court: Okay. So you need to know, too, that this is just recommendations from the Government and recommendations from you and your lawyer. And I'm going to consider the full range of punishment. I've certainly entertained those two recommendations, but I'm going to consider the full range of punishment in your case. Do you understand?

Browning: Yes. Yes, Your Honor.

[*Id.* at pp. 7-8]

Court: Has [your lawyer] also explained to you the sentencing guidelines?
Browning: Yes, Your Honor.

Court: That's all set out on pages 5, 6, and 7. So you'll understand after you plea, I'll get with the probation office and we'll calculate the sentencing guidelines by using two factors. The first is your criminal history, that's your criminal record, if any, and then the second is what we call the total offense level for this offense. So those are the two factors then that go into the calculation. And if you disagree with the calculation, you can challenge that determination. Do you understand all that, too?
Browning: Yes, your Honor.

Court: I see at the top of page 7 that the lawyers estimate the total offense level to be 40. And it may well be 40, but it could be higher, could be lower. But, again, if you disagree, you can challenge that determination. Understand?
Browning: Yes, Your Honor.

Court: I need to explain, too, that the sentencing guidelines, whatever they turn out to be, are simply guidelines. And by that, I mean I can impose a sentence against you that's above the guidelines or a sentence that's below the guidelines. Do you understand that, too?
Browning: Yes, Your Honor.

Court: What I'm bound by, though, is the statutory penalty. That's paragraph 5, at the top of page 5. So the penalty for this offense is a minimum of 10 years in prison, all the way up to life, a fine of up to $10 million, or a combination of imprisonment and fine. After your release, there would be a period of supervised release of not less than five years. Do you understand all that too?
Browning: Yes, Your Honor.

Court: Now, like I mentioned before, I'm going to consider the full range of punishment from 10 years minimum to life maximum, and then sentence to be imposed will be in my discretion within that range of punishment. Do you understand?
Browning: Yes, Your Honor.

Court: Has anyone told you or promised you what sentence you'll receive in the case then?
Browning: No, Your Honor.

[*Id.* at pp. 10-12].

During the plea hearing, the prosecutor recited the factual basis for the guilty plea. [*Id.* at pp. 12-13]. The Court then asked Browning whether he agreed with the factual basis:

Court: You heard the statements from the prosecutor?
Browning: Yes, Your Honor.

Court: Is everything he said true and correct?
Browning: Yes, Your Honor.

Court: Do you admit that you did all those acts he described?
Browning: Yes, Your Honor.

Court: There's no question about it, is there?
Browning: No, Your Honor.

Court: And, again, you've read the facts that are stated on page 3 and 4 [of the written plea agreement]. Everything there is true and correct?
Browning: Yes, Your Honor.

[*Id.* at pp. 13-14]. Thereafter, under further questioning by the Court, Browning admitted he was guilty of each element of the charged offenses. [*Id.* at 14]. The Court then found that Browning was competent to enter a plea of guilty, that he did so freely, knowingly, and voluntarily, and that he admitted the essential elements of the crime charged. [*Id.* at p. 14]. The Court set a date for sentencing, ordered a presentence investigation, and directed Browning to speak with the probation office to begin the preparation of the presentence report. [*Id.* at pp. 14-15].

The Court also made inquiry as to Browning's level of satisfaction with his attorney prior to accepting his guilty plea:

> Court: Because this is a criminal case, you're entitled to effective representation from a lawyer at each stage of the proceedings against you. Do you understand?
> Browning: Yes.
>
> Court: So with that in mind, I'll ask you, are you satisfied with the way your lawyer has handled your case?
> Browning: Yes, Your Honor.
>
> Court: Has he investigated the case to your satisfaction?
> Browning: Yes, Your Honor.
>
> Court: Has he done everything you've asked him to do then?
> Browning: Yes, Your Honor.
>
> Court: No gripes or complaints whatsoever?
> Browning: Yeah.
> Court: Correct?
> Browning: Correct.

[*Id.* at p. 4].

***Presentence Investigation Report***

In the Presentence Investigation Report (PSR), the base offense level was reported to be 38. [Doc. 824, ¶ 73]. Two levels were added because the offense was committed as part of a pattern of criminal conduct engaged in as a livelihood. [*Id.* at ¶ 74]. Three levels were added because the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive. [*Id.* at ¶ 76]. Three levels were deducted because the defendant clearly demonstrated acceptance of responsibility and timely notified authorities of the intention to enter a plea of guilty. [*Id.* at ¶¶ 80, 81]. The total offense

level was calculated to be 40. [*Id.* at ¶ 82].

Browning had one prior criminal conviction resulting in a criminal history score of one and a criminal history category of I. [*Id.* at ¶¶ 85-89]. With a total offense level of 40 and a criminal history category of I, the guideline imprisonment range is 292 to 365 months. [*Id.* at ¶ 112]. The PSR noted that parties agreement that the defendant would recommend a sentence of not less than 120 months, and the government will recommend a sentence not more than 240 months. [*Id.* at ¶ 112].

***Sentencing Hearing***

On February 20, 2025, Browning appeared with his attorney for sentencing. [Doc. 891]. The Court began by discussing the presentence report from the probation office.

> Court: Did you also get a copy of the [presentence] report?
> Browning: Yes, Your Honor.
>
> Court: Have you read it and have you gone over it in detail with your lawyer.
> Browning: Yes, Your Honor.

[*Id.* at p. 3]. The Court then noted the guideline range of 292 to 365 and the statutory minimum of not less than ten years. [*Id.*]. The Government made a sentence recommendation of 240 months, a 52 month downward variance from the bottom of the Sentencing Guidelines. [*Id.*]. In support of its recommendation, the Government discussed mitigating and aggravating factors. [*Id.* at pp. 3-6]. In addition to a sentencing memorandum, letters, and certifications submitted by Browning [Docs. 812, 813], his counsel engaged in a lengthy discussion of mitigating factors in support of Browning's request for a 10 year sentence. [Doc. 891 at pp. 7-14]. Browning then had an opportunity to

make statement. [*Id.* at pp. 14-15]. Ultimately, the Court sentenced Browning to 180 months incarceration, which was 112 months ***below*** the guideline imprisonment range, by way of a downward variance. [*Id.* at p. 17].

***Appeal***

Browning appealed, and his retained counsel filed an *Anders* brief. [Doc. 1009]. Browning argued that the 180-month sentence was excessive and unreasonable. *See USA v. Browning*, Appeal No. 25-1499, Appellant's Opening Brief. He claims he should have been sentenced to a term closer to the 120 months he advocated at sentencing. [*Id.*]. He argued there was no basis for the 180-month sentence and it was unnecessarily punitive. [*Id.*].

The Eighth Circuit held that Browning's appeal waiver in the written plea agreement was enforceable and was applicable to the issues raised in the appeal. [Doc. 1063]. The appellate court conducted an independent review of the record under *Penson v. Ohio*, 488 U.S. 75 (1988), and dismissed the appeal. [*Id.*]. The mandate was issued on February 3, 2026. [*Id.*].

***§ 2255 motion***

Browning filed the instant § 2255 motion in a timely manner, advancing two claims. First, he claims jeopardy attached when the Court accepted his guilty plea and, therefore, it was a constitutional violation for the "prosecutor and probation officer to bring new unproven allegations for the purpose of enhancing [his] sentence." Second, he makes an ineffective assistance of counsel claim alleging trial counsel failed to

explain the plea agreement to his "full understanding and the full consequences of the plea agreement."

## II. LEGAL STANDARDS

### ***28 U.S.C. § 2255***

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on grounds that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To obtain relief under § 2255, the petitioner must establish a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)). The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion, files, and records of the case conclusively show that the movant is not entitled to relief." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citing 28 U.S.C. § 2255(b)). The motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record,

inherently incredible, or conclusions rather than statements of fact." *Engelen v. U.S.*, 68 F.3d 238, 240 (8th Cir. 1995).

***Ineffective Assistance of Counsel***

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, the petitioner must show that his counsel did not perform to the degree of skill of a reasonably competent attorney, and as a result, he was prejudiced. *Id.* at 687. Failure to satisfy either of the *Strickland* prongs [performance or prejudice] is fatal to the claim. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("If the petitioner makes an insufficient showing on one component, the court need not address both components.").

"*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017). The Court "will not find an attorney's performance constitutionally deficient unless it is outside the "wide range of reasonable professional assistance." *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 689). "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Id.* (citing *Buck*, 580 U.S. at 118-119). The Court makes "every effort to eliminate the "distorting effects of hindsight" and consider performance from counsel's perspective at the time." *Id.* (quoting *Strickland*, 466 U.S. at 689). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir.

2010) (internal citation omitted). A petitioner "bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).

A court need not determine whether a movant meets the performance prong of *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Strickland*, 466 U.S. at 697. "[T]he prejudice prong requires proof that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (internal citation and quotation marks omitted). This inquiry depends on the likelihood of success if the alleged error were corrected." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the [m]ovant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). Where the petitioner states on the record that he is satisfied with his lawyer, that no threats or promises had been made to induce him to plead guilty, and admits his guilt, he has a heavy burden to

overcome those admissions and show that his plea was involuntary. *Nguyen*, 114 F.3d at 703.

## III. DISCUSSION

Browning makes the bare allegation that following his guilty plea, the "prosecutor and probation officer [introduced] new unproven allegations for the purpose of enhancing [his] sentence." It appears Browning is attempting to make a claim for prosecutorial misconduct. Prosecutorial misconduct may warrant relief under § 2255 under limited circumstances. *See generally United States v. Duke*, 50 F.3d 571, 577–78 (8th Cir. 1995). However, if the prosecutorial misconduct claim was not raised on direct appeal, the defendant must establish cause to excuse the procedural default. *See, e.g., Hunt v. Houston*, 563 F.3d 695, 704 (8th Cir. 2009) (claims of government misconduct are subject to cause and prejudice requirements). Further, the defendant generally must show at least some likelihood that the misconduct impacted the outcome. *See Duke*, 50 F.3d at 577. The Court presumes that a prosecutor has properly discharged his duties absent clear evidence to the contrary. *United States v. Smith*, 574 F.3d 521, 525 (8th Cir. 2009).

Browning did not raise this issue on direct appeal, rendering the claim procedurally defaulted, which is reason alone to deny this claim. *See Matthews v. U.S.*, 114 F.3d 112, 113 (8th Cir. 1997) ("The failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion, and this rule applies equally when the conviction was entered pursuant to a guilty plea."). The claim also fails on the merits. The Court has thoroughly reviewed the record and

concludes that there is no evidence to substantiate Browning's prosecutorial misconduct claim. Under the plea agreement, the Government agreed to recommend a sentence of not more than 240 months, which is the recommendation that was made at sentencing.

Further, to the extent Browning suggests the presentence investigation report (PSR) was inaccurate, the claim fails. The PSR reported the total offense level to be 40, the same as the total offense level stated in the plea agreement. The sentencing guideline range reported in the PSR was based on that total offense level.

Finally, Browning received a sentence within the recommendations made by the parties pursuant to the plea agreement. As a result, he cannot show any prejudice.

Next, Browning contends his attorney failed to inform him of the full consequences of the plea agreement. He claims that neither his attorney nor the prosecutor explained that after he pleaded guilty, the probation officer would prepare a report to be presented to the court. Further, he claims he was not told that the Court could use the "unproven" claims in the report to "greatly enhance his sentence." He asserts that if the consequences had been explained to him, he would not have entered into the plea agreement.

Browning's claims are refuted by the record. The record clearly reflects that Browning was advised of the possible consequences of a guilty plea and the possible penalties. The possible penalties were set forth in the written plea agreement and were stated by the Court during the plea hearing. Under questioning from the Court at the plea hearing, Browning stated that he understood the range of punishment and that the sentence to be imposed was within the Court's discretion. The Court told Browning that

the sentencing guidelines would be calculated by the probation office. It is also clear in the plea agreement that there would be a Presentence Report prepared by the probation office [Doc. 635, pp. 7, 8, 12]. There is no factual or legal basis to support Browning's claim that "unproven" claims in the PSR "greatly enhance[d] his sentence."

Nor was Browning prejudiced in any respect by his counsel's advice to plead guilty. He received a sentence far below the sentencing guidelines and squarely within the range he agreed to in the plea agreement. He knew that the range of punishment was ten years to life imprisonment. He would not have received the three-point reduction for acceptance of responsibility if he had gone to trial. As a result, the sentencing guidelines would have been higher.

Based on the record, Browning's claims are clearly refuted by the record, and he has not demonstrated any prejudice related to the alleged errors. Nor has he established any factual or legal basis to find his plea was involuntary. As such, his claims are denied.

Finally, Browning is not entitled to a hearing on the instant motion because his allegations are contradicted by the record, inherently incredible, and consists of speculation and conclusions.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **DENIED** without a hearing and this matter is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in the § 2255 motion because petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED** on this 4th day of September, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE